ARMENTO v. UNITED STATES et al.

No. 18079.

District Court, E. D. New York.

Nov. 6, 1947.

Abraham M. Fisch, of New York City, for libellant.

J. Vincent Keogh, U. S. Atty., of New York City, (Bigham, Englar, Jones & Houston, and John L. Quinlan, all of New York City, of counsel), for respondent.

Bernard Katzen, of New York City (Harry Schechter, of New York City, of counsel), for impleaded respondents.

GALSTON, District Judge.

The libellant, while working as a shore carpenter employed by the impleaded respondent to make repairs aboard the S. S. Patrick C. Boyle, was injured.

The vessel was owned by the United States of America, the respondent. Brenack Bros., the respondent-impleaded, had entered into a contract with the United States to make repairs aboard the vessel. It was a cargo ship and had carried ammunitions. The contractors were to inspect the sheathing in the holds, make whatever repairs were necessary, furnish the lumber, man and supervise the work.

The libel grows out of an injury which occurred on February 25, 1945. The libellant testified that as he descended a ladder leading from the main deck to the hold at Hatch No. 2, he felt a rung of the ladder give way and he fell to the hold, a distance of 25 or 28 feet. He described the ladder as being a double ladder in that the inner portion was made of steel, and the outer portion had a covering of wood. Frank Armento, a brother of the libellant, also employed as a repairman by the respondent-impleaded, said that though he did not see the libellant fall from the ladder, he did see the body in flight. Shortly after the accident he inspected the ladder and found a rung missing. Frank Armento had descended the ladder about five minutes before the libellant and observed that a piece of the rung was missing on one side, and that the balance was held in place by only one nail. He gave no warning to his brother.

Caulfield, another worker, testified that he had inspected the ladder in the afternoon, after the accident which had occurred about one P.M., and he found one of the steps missing, though on cross-examination he admitted that he had gone down the ladder in the morning and had noticed a corner broken off one of the steps; "there was one inch off, as far as I looked at it, but I got over it and it didn't bother me.

"Q. How did it look to you, safe or dangerous? A. I got over.

"Q. It looked safe to you then? A. Safe enough."

He also said that a number of the men had used the ladder and that at the time when the accident happened there were eight or nine men in No. 2 hold, and that they had used the same ladder. He too had not informed anybody of the fact that a piece of the wooden step was missing.

The captain of the vessel by deposition testified that when the vessel came into New York, in February 1945, sheathing in the hold had to be repaired, and on the 'tween deck also, and precaution was taken to cover all of the metal. He explained that on the ammunitions ships, wooden ladders were placed over the steel so that no metal cargo could touch against the ladder. He explained that when the vessel was discharged at Antwerp, an inspection was made, including that of No. 2 hold, and after that was done the hold was closed. No. 2 hold was next opened for ballast for the return trip. This ballast was put on at Antwerp, and after that the hold was

sealed and opened next in New York by longshoremen. He said that after the ship arrived in New York in February, no one with his knowledge, connected with the ship, made any inspection of No. 2 hold.

It is important to note from the answers of the respondent and the respondent-impleaded to interrogatories, that the respondent-impleaded had agreed to inspect, examine, build, alter, change and repair all the wood covering, including the sheathing on the ladders of the Boyle. The respondent-impleaded also admitted, in these answers to interrogatories, that on the morning of February 22, 1945 a gang of its employees under its foreman examined No. 2 'tween deck hatch and hold to ascertain what parts of the wooden covering were in need of repairs. These parts included the ladders, (see particularly answers "Fifth" and "Sixth" of respondent-impleaded to interrogatories of the respondent).

Donovan, the foreman of the respondent-impleaded, was asked:

"Q. If any part of the sheathing on the ladder was out of repair, were you supposed to repair the defects in it? A. We were.

*    *    *    *    *    *

"Q. And if any part of the sheathing on that ladder was broken, were your men supposed to report it to you? A. If they did not report it to me they were supposed to report it to one of my assistants who was in charge of the hatch at the time."

There is nothing in the record to show that any such report of the defective step on the ladder was reported to Donovan or any of his assistants.

■ All of this testimony, and that of the captain, would seem to free the ship of any actual knowledge of defects in the sheathing of the ladder in question. The libellant bases his case on the rule of law enunciated in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. But the rule of the Sieracki case is not applicable here. See particularly Lynch v. United States et al., 2 Cir., 163 F.2d 97, 99. That case considered the rights of the employee of an independent contractor against the owner of the vessel. It was said there in the concurring opinion of Judge Learned

Hand that "Seas Shipping Co. v. Sieracki, covers stevedores, but the employees of a contractor still remain 'business guests,' * * * and are not entitled to a seaworthy ship under the doctrine of the Osceola. The duty to them is therefore only to advise them of any known dangers, or any that would have been discovered by reasonable care."

■ The facts in the case at bar show no knowledge of dangerous conditions, and indeed disclose that the matter of repairing any defects including those in the ladders was an obligation of the independent contractor. See on these facts Byars v. Moore-McCormack Lines, 2 Cir., 155 F.2d 587. In the circumstances the libel as against the respondent must be dismissed.

■ In the light of the evidence in this case, as was said in Lynch v. United States of America, supra, the libellant cannot recover from the respondent-impleaded in this suit. His only relief against it lies under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The impleading petition will, therefore, be dismissed.

Concurrently with the filing of this opinion, appropriate findings of fact and conclusions of law will be filed.