## CIOFFI v. NEW ZEALAND SHIPPING CO., Ltd., et al.

United States District Court
S. D. New York.

April 1, 1948.

See also 73 F.Supp. 1015.

Philip Brown, of Brooklyn, N. Y. (Russell C. Gay, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox & Keating, of New York City (Raymond Parmer, of New York City, of counsel), for New Zealand Shipping Co., Ltd.

Mendes & Mount, of New York City (Frank A. Bull and Daniel Huttenbrauck, both of New York City, of counsel), for Bethlehem Steel Co.

Alexander & Ash, of New York City (Edward Ash and Sidney A. Schwartz, both of New York City, of Counsel), for Howland Mut. Lumber Co., Inc.

GODDARD, District Judge.

Libelant sued New Zealand Shipping Co., Ltd. [hereinafter referred to as New Zealand] and Bethlehem Steel Company [hereinafter referred to as Bethlehem] for damages for personal injuries sustained as a result of the alleged negligence of respondents. New Zealand impleaded Howland Mutual Lumber Co., Inc. [hereinafter referred to as Howland].

Cioffi, an employee of Howland, while descending to work in No. 2 hold of the steamship Orari on May 26, 1941 fell through the bobby hatch on the lower 'tween deck to the bottom of lower hold. Cioffi charges that the passage was ob-

structed by loose hatch covers and that it was inadequately lighted. The respondents and respondent impleaded deny Cioffi's charges and each denies responsibility for what happened.

That Cioffi fell and was injured is not disputed, and this raises two questions—Is he entitled to recover damages, and if so —from whom?

The Orari, a refrigerator vessel, was owned and operated by New Zealand. At the time of the accident and for the past month she had been in Bethlehem's shipyard in Brooklyn where Bethlehem was installing new refrigerator compartments and new insulation necessitated by torpedo damage, and also doing degassing work. The Orari had three decks—main deck, upper 'tween deck, lower 'tween deck, besides lower hold.

Cioffi, a ship's carpenter for some 28 years, was an employee of Howland which, under a direct contract with New Zealand, was engaged in doing certain carpenter work on the Orari. On Cioffi's second day on the ship, May 26, 1941, he had been working in No. 3 lower hold when he stopped for supper at 5 p. m., but when he returned from supper at 7 p. m. he and several other Howland men were told by their foreman that they were to assist in the work in No. 2 lower hold. The others following, Cioffi started for the lower hold through the deck bobby hatch down a ladder to the upper 'tween deck and by way of another bobby hatch and ladder to the lower 'tween deck. Then, according to his testimony, as he was about to descend through the deck bobby hatch down a ladto the lower hold he stumbled against a loose hatch cover, which he could not see because it was dark there, lost his balance, and fell to the bottom of the hold some 20 feet.

I am convinced, after hearing and observing the libelant and witnesses, that his fall was caused by his stumbling over a hatch cover or some other obstacle in his path which he did not see because of the lack of sufficient light. It is quite true that his description of the object he stumbled against and its location differs from that of others who came there after he had fallen. But this may well be due to the fact that in the dim light he could not see distinctly.

The opening in the bobby hatch where he fell was 2 feet 8 inches by 1 foot 9 inches, and the measurements of the openings in the deck and upper 'tween deck hatches did not differ materially. There was no artificial light in the lower 'tween deck, and such natural light as there was came through the bobby hatches above— one on the upper 'tween deck and one on the main deck. It is evident that there would have been but little natural light in the lower 'tween deck—not enough to enable one to clearly see objects, especially one coming from the daylight—until he became accustomed to the dim light.

New Zealand had moved the Orari to Bethlehem's shipyard for certain repairs by Bethlehem. However, the work Howland, libelant's employer, was engaged in was under a contract with New Zealand—not Bethlehem—so that, as least, there was no contractual relation between Bethlehem and Howland's employees which imposed upon Bethlehem the duty of exercising special care towards them.

New Zealand maintained aboard the Orari while in Bethlehem's yard nearly a full crew and the ship's master or mates were alternately in charge and control of her generally. New Zealand refers to the fact, in an effort to show that she was under the control of Bethlehem, that members of the crew could not enter the shipyard without permission of Bethlehem's gate-keeper, but this permission was merely to enter the yard. Both Bethlehem's and Howland's employees had to have permission from the member of the ship's crew on watch before going aboard the ship.

[1] Although there is some dispute as to just what part of No. 2 cargo space Bethlehem's men worked, the evidence is that they had finished their work in No. 2 at the earliest on the night of May 23rd or at the latest on the morning of May 24th—more than two days before the accident. Therefore, unless Bethlehem's men created or left a dangerous condition and this condition existed up to the time of the accident, there seems to be no ground for

holding Bethlehem liable. There is no evidence that Bethlehem's employees created or left No. 2 cargo space in the dangerous condition which existed at the time of the accident.

■ The doctrine that a ship owner is under an obligation to provide seamen with a seaworthy ship has been extended to contract stevedores injured while working aboard a vessel, Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Lynch v. United States, 2 Cir., 163 F.2d 97; Anderson v. Lorentzen, 2 Cir., 160 F.2d 173; Fodera v. Booth American Shipping Corporation, D.C., 66 F. Supp. 319, affirmed 2 Cir., 159 F.2d 795; Lauro, Adm'x, v. United States, 2 Cir., 162 F.2d 32, but there seems to be some doubt as to whether this doctrine extends to contract repairmen as distinguished from contract stevedores. Lynch v. United States, supra; Petersen v. United States, opinion of Leibell, D.C.S.D.N.Y., 80 F.Supp. 84. However, the law of this Circuit is that a ship owner owes a "business invitee" a reasonably safe place to work. Lynch v. United States, supra; Anderson v. Lorentzen, supra; Fodera v. Booth American Shipping Corporation, supra.

The ship's third officer on duty at the time of the accident testified that when he went down in the No. 2 lower 'tween deck immediately after the accident there was no artificial light there and that as he was returning to get a flash light he saw on the main deck near the bobby hatch portable electric light equipment consisting of clusters of three or four bulbs with flexible leads to the terminal box used for illuminating the holds. This testimony was uncontradicted. There was no evidence offered as to a practice or custom or contractual obligation as to who was to supply lighting equipment—whether the vessel owner or the independent contractor.

There is testimony by two fellow employees of libelant that they had worked in No. 2 lower hold during the day, but they were not asked whether they then had been supplied with electric light equipment; but it is highly probable that it was provided and used, otherwise it would have been too dark in the lower hold to work.

■ In view of the uncontradicted credible testimony that electrical equipment was lying on the deck near the bobby hatch ready for use and available to libelant or his foreman, the vessel owner ought not to be held liable for any injuries sustained by Howland's employees because of their or libelant's failure to use the equipment available for lighting the 'tween decks. The Hindustan, D.C., 37 F.2d 932, affirmed 2 Cir., 44 F.2d 1015; Long v. Silver Line, Limited, D.C., 41 F.2d 367, affirmed 2 Cir., 48 F.2d 15; Riley v. Agwilines, Inc., 296 N.Y. 402, 407, 73 N.E.2d 718.

■ If the vessel owner was responsible for the obstruction and the obstruction was a concurrent cause of libelant's fall, the owner would be subject to liability, although it may well be that had there been sufficient light, libelant would have seen the obstruction and avoided it. But there is no evidence that the ship's officers or crew had been working in No. 2 hold that day, nor that they caused or had knowledge of any obstruction in the pathway to the bobby hatch on the lower 'tween deck. When a ship owner surrenders control of part of his ship to an independent contractor his duty as to the part surrendered extends only up to the time the independent contractor assumes control. Lynch v. United States, supra, and cases therein cited. Howland's employees were working in the lower hold of No. 2 during the day; they passed up and down through the same bobby hatches without reporting any difficulty or obstruction.

When Howland's foreman ordered the libelant to go down to the lower hold to work he, the foreman, knew or should have known that the lower 'tween deck and lower hold would be dark and that artificial light would be necessary not only to enable his men to find their way down but also to carry on the work in the lower hold. It was the duty of the foreman to have made use of the electric light equipment which was lying on deck near the bobby hatch. The vessel owner was not responsible if Howland's foreman failed to use the equipment which was at hand.

■ The libelant may not have a direct judgment against Howland, his employer,

for his exclusive remedy is by way of compensation under the United States Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.; Swanson v. Marra Brothers, Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045; Benevento v. United States, 2 Cir., 160 F.2d 487.

Decrees may be entered dismissing the libels and the impleading petition.

Proposed findings of fact and conclusions of law to be submitted promptly upon three days' notice.