**BOW v. PILATO et al.**

No. 8414–M.

United States District Court
S. D. California, Central Division.

Feb. 4, 1949.

400

Hoag & Mack, A. F. Mack, Jr. and Richard L. Oliver, all of Los Angeles, Cal., for libelant.

Overton, Lyman, Plumb, Prince & Vermille, L. K. Vermille and Dan Brennan, all of Los Angeles, Cal., for respondents.

McCORMICK, Chief Judge.

This is a libel in personam in admiralty as for a maritime tort.

The respondent company and the personal respondents are and were at all applicable times joint owners and operators of a fishing vessel of American registry named "Sea Maid," which at such times was moored alongside the landing dock of Franco-Italian Packing Company in navigable waters of Los Angeles Harbor.

On July 12, 1947, at the invitation and direction of the respondents, Adolph B. Bow, the libelant, was aboard the "Sea Maid" for the purpose of making certain repairs upon the six-cylinder Atlas Diesel engine of such vessel.

During a fishing voyage into Mexican waters an oil line on the "Sea Maid" broke, causing certain of the journal and main bearings of the engine to burn out and so disabling the ship as to necessitate towing her back to Los Angeles Harbor. A strike in the shipyards at the harbor made unavailable customary ship repair facilities. The plant superintendent in the cannery of respondent Franco-Italian Packing Company, which corporation was at the time libelant's employer in its cannery as a laborer, as well as being also the owner of a one-half interest in the ship "Sea Maid," told respondents Messano and Ani-

ello Pilato that libelant Bow was an experienced engine-bearing repairman and would be made available to go aboard the "Sea Maid" and at the corporate respondent's cannery time and wages make the necessary repairs to the disabled engine so as to restore the vessel to a seaworthy condition.

The three personal respondent owners of the other share and interest in the "Sea Maid" discussed with libelant Bow his mechanical ability and his experience as an engine room repairman upon bearings of Diesel marine engines. He had a rating as Third Engineer from the Philippine Merchant Marine. Having satisfied themselves as to libelant's mechanical experiences, the three personal respondents and other crewmen of the "Sea Maid" accompanied libelant into the engine room of the "Sea Maid" and respondent Messano directed libelant to the disabled engine which had been previously partially disassembled, a piston having been removed from the engine and placed to the side of the engine on the floor boards.

Bow, after inspecting the engine and noting indications of faulty bearings, decided to first ascertain whether the crankshaft was true and efficiently operable. This he sought to determine in the admitted customary way of putting blue chalk on the bearings and fitting the chalked bearings against the crankshaft. The operation called for Bow, through ports at the side of the engine, to manually hold the bearings inside the crankcase while another man turned the flywheel, and who at Bow's direction was to turn, slow, and stop the mechanism so as to enable Bow to work safely in and about the engine.

The position of Bow's hands while working inside the crankcase were not visible to the operator of the flywheel who manipulated the mechanism conjunctively with a bar inserted into notches on the flywheel at the after end of the engine. Throughout the operation, however, the flywheel operator could plainly see most of Bow's body as he was in a necessary half-lying sidewise position manually reaching into the crankcase to inspect and "blue" the bearings. He was within a few feet of the flywheel and was clearly within ordinary hearing of the flywheel operator at all times throughout the operation.

There is some uncertainty in the testimony of the libelant as to the identity of one of the men who operated the flywheel on the day of the accident. This vagueness is undoubtedly attributable to Bow's unfamiliarity with the personal respondents and crewmen of the "Sea Maid" whom he had never met until a short time before the accident on the day it happened and whom he saw only a brief period in the engine room, and to the further circumstance of the pain which Bow underwent in the accident. The effect of this insecurity of identification is of little consequence in this action.

The operator of the flywheel at the time of the accident and injury to the libelant is indisputably shown to have been either Aniello Pilato, one of the personal respondents, or John Scognamillo, a crewman of the "Sea Maid," acting under the direction and in the immediate employ and service of the personal respondents.

Messano initially in the bluing operation had turned the flywheel according to direction from Bow while Bow manually worked in the engine safely and without untoward incident. Leaving his position at the flywheel, Messano, according to the preponderance of the evidence, turned its operation over to Scognamillo while Bow continued the "bluing" activities on the crankshaft, admonishing the then flywheel operator to turn the wheel slowly. Instead of doing so, he operated it so fast that Bow could not extricate his right hand from the swift downward movement of number two journal in time to prevent it from being caught and pinned until Messano hearing his scream came back to the flywheel and turned it in such manner as to release Bow's hand from further squeezing.

We think it clear from the preponderance of the evidence that the injury to libelant's hand, which is admittedly serious, with a doubtful prognosis of complete recovery, was proximately caused by negligence of respondents in the operation and control of the flywheel and cooperative mechanism which was thereby activated while libelant was working on the disabled marine engine of the "Sea Maid," a ship

jointly owned at the time by all respondents.

■ We conclude, therefore, under the record before us, that Bow was performing maritime service at the time of his injury and is entitled to appropriate damages against the respondent owners of the "Sea Maid." Seas Shipping Co., Inc., v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; see, also De Zon v. American President Lines, Ltd., 1943, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065.

■ There is testimony by libelant in this action from which respondents argue that Bow could have worked with safety by having "let" the number two journal pass by before inserting his hand to the site of "bluing" or by having introduced his hand through number one port to "blue" the bearings about number two journal. But even if this contention were sound, which is doubtful under the record, it would as contributory negligence merely operate in mitigation of damages and not in total denial of recovery to libelant for his injuries. The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; Herring v. Luckenbach S. S. Co., Inc., 2 Cir., 137 F.2d 598.

■ Nor do we think the defense of assumption of risk is available or applicable in this proceeding in the light of the established maritime status of Bow at the time and place of the accident which brought about his injuries. Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Norton v. Warner Co., 1944, 321 U.S. 565, at page 570, 64 S.Ct. 747, 88 L.Ed. 931.

■ Another defense asserted by respondents to this action is that inasmuch as the corporate respondent Franco-Italian Packing Company had a contract with the California Casualty Indemnity Exchange securing to libelant the payment of disability compensation as provided by the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. § 901 et seq., the sole relief available to Bow is that specified in such Act, and as Bow has been receiving disability compensation by reason of his relationship with the packing company he is thereby disabled from seeking relief against respondents in this admiralty proceeding. See Section 905, Title 33 U.S.C.A. Under the indisputable facts in the record before us we think that Bow's redress against the respondent joint tort-feasors is not to be measured by the provisions of the Longshoremen's and Harbor Workers' Compensation Act or by any State law relating to workmen's disability. Undoubtedly if the injury to libelant had been wholly produced and sustained in the course of his employment with the corporate respondent, such unitary tort-feasor would by the terms of the invoked Act be rendered immune from suit by its employee. Doll v. Scott Paper Co., 3 Cir., 1947, 91 F.2d 860. The compensation act, however, does not pretend to relieve an employer of all liability, but only of liability to his employees, and Bow at the time of the accident and his injury was an employee of another and distinct entity, in substance and effect a third party, composed of the personal respondents and the Franco-Italian Packing Company, Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. It was this owner-partner entity that constituted the joint wrongdoers, thereby imposing a common liability upon them to the party injured, the libelant Bow. The indemnity of the California Casualty and Indemnity Exchange is no ultimate or plenary coverage for the marine tort that is the subject of this action.

We think that the payments which have been made to libelant by reason of the policy of the California Casualty and Indemnity Exchange have no bearing upon this action under the pleadings before us. There may be aspects or features of contribution among the respondent joint tort-feasors, but as to any such matters they are not pertinent to the cause at this time. Cf. The S. S. Samovar, D.C.1947, 72 F. Supp. 574; The Tampico, D.C.1942, 45 F. Supp. 174.

■ The injuries to libelant's hand are serious and the extent of his disability under the medical evidence is problematical. In considering similar cases the courts have shown a wide range in awarding damages. Taking all the evidence before the court into consideration, a judgment for

libelant against all respondents in the sum of $6000.00 with costs is warranted. It is so ordered.

Proctors will prepare, serve and present within ten days under the rules, findings of fact, conclusions of law and judgment in accordance with the views expressed in this memorandum.