**O'CONNELL v. NAESS,**

No. 217, Docket 21221.

United States Court of Appeals
Second Circuit.

Argued April 11, 1949.

Decided July 11, 1949.

Levy, Galotta & Corcoran, New York City, attorneys for plaintiff-appellant; William J. Corcoran, New York City, counsel.

Haight, Deming, Gardner, Poor & Havens, New York City, attorneys for defendants-appellees; Walter G. Evans, New York City, counsel.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff as administratrix of the estate of her deceased husband James O'Connell brings this action to recover damages for his death upon the theory that it was caused by the negligence of the defendants. O'Connell was employed as a rigger by the Bethlehem Steel Company at the latter's yard at Hoboken, New Jersey, where he was engaged in removing piston No. 2 from a diesel engine on the tanker Solstad which was owned and operated by the defendants. Bethlehem was an independent contractor which had agreed to make repairs on the Solstad in-

cluding the removal and overhauling of her main engine pistons. Under its contract Bethlehem was to furnish the labor and materials and also the tools and equipment necessary for the work.

When the work of removing the pistons was started by Bethlehem, McGee, who was the foreman in charge of that work, asked the defendants' engineer if he had equipment to remove the pistons and was told that it would be laid out for Bethlehem's men to use. If the latter had not been allowed to use this equipment of the ship, they would have used Bethlehem's own equipment. Such equipment was laid out for McGee by the ship, and McGee also had some additional equipment from Bethlehem's yard brought aboard.

The process of removing the pistons is thus described in the defendants' brief, which is in accordance with the uncontradicted testimony of Mr. Ford, an expert in diesel engines: "Pistons are removed from this type engine by letting them down through the bottom of the cylinder rather than lifting them up through the top. In the top of the piston head there are two threaded holes into which eyebolts are screwed, and shackles attached to chain falls are fastened into the eyes of the bolts to hold the piston and allow it to be lowered down through the cylinder under control. When the eyebolts are in and the shackles attached to them, the piston is raised enough to disconnect the bottom of the piston rod from the crankshaft, and then it is lowered down until the head of it is under the bottom of the cylinder. While the piston is in that position, still being held vertically by the eyebolts, a wire strap attached to a chain fall is affixed to the bottom of the piston rod with which the bottom can be raised and held off the engine room floor. As soon as reasonably possible, another strap, or clamp, attached to a chain fall can be, and should be, attached to the other end of the piston rod just under the head, so the piston will be supported by a strap at, or near, each end. By raising the bottom of the piston rod with the chain fall at that end, the piston may be placed in a horizontal position, the strain being taken off the eyebolts by the strap supporting the piston just under its head."

Piston No. 1 was removed without injury to anyone two days before the accident occurred in connection with piston No. 2. In the beginning of that operation, the workmen failed to use a wire strap at the piston head end in order to relieve the strain on the eyebolts, but were warned by McGee that the removal of the piston without such a strap was dangerous. They accordingly supplied the support that was lacking, and the piston was thereafter removed safely in accordance with the way described by Mr. Ford.

In removing piston No. 2, no strap was placed around the piston just below the head prior to moving it into a horizontal position, in which the strain on the eyebolts would be much increased. This appears to have been the testimony of both defendants' witness McGee and plaintiff's witness Caldara. While plaintiff's intestate was apparently engaged in handing up a strap to furnish support to the piston and relieve the strain on the eyebolts, but before that operation was accomplished, the eyebolts snapped and the piston struck him, so injuring him that he died soon thereafter.

The plaintiff claims that the eyebolts broke away because of structural defects as to which she offered evidence. The defendants claim that the eyebolts were without defect and broke because they were not properly supported by a strap under the piston head as McGee had directed. There was likewise evidence in support of this version. These conflicting claims were left to the jury in a perfectly clear charge, and it found a verdict for the defendants.

The plaintiff argues that the ship's officers should have stopped the work when they found that Bethlehem was moving the piston into a horizontal position without the support of a strap. But the authority of the ship's officers to stop the work under such circumstances was disputed and the question whether they had such authority was properly left to the jury.

The plaintiff makes the argument, although she did not urge the point at the

trial, that if the eyebolts furnished by the ship were defective, the ship was unseaworthy and the defendants would be liable irrespective of negligence. Such a contention by an employee of a sub-contractor was recently overruled by us in Guerrini v. United States, 167 F.2d 352, where we held that the decision of the Supreme Court in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, did not extend to employees of independent contractors engaged in repairing the ship. We would adhere to our decision, even if the point had been raised in the court below.

■ The plaintiff took a single exception to the charge in connection with the denial of her request that the court instruct the jury that, if the ship was voluntarily supplying all of the necessary gear to Bethlehem and did not supply a clamp in connection therewith, the ship was liable in the event the absence of the clamp contributed to the accident. Irrespective of whether there was any proof that a clamp was necessary when straps that seem to have served the same purpose were available, plaintiff's objection must fail because, under the contract with Bethlehem, the latter was obliged to furnish the equipment and the defendants' voluntary offer to allow Bethlehem to use some of the ship's equipment could not be converted into a duty to furnish all of the necessary gear.

■ Finally, the plaintiff assigns error on the part of the trial judge because the latter read § 388 from the Restatement of Torts of the American Law Institute in charging the jury. Plaintiff's counsel made no objection to reading § 388 either at the time the charge was originally given or when the jury came back to have the above section reread. However, at an informal discussion in the Judge's Robing Room after the jury had finally retired, plaintiff's counsel criticized the procedure of reading from the Restatement. We can see nothing in the criticism, since the section as read and explained to the jury was clear, and a judge may as appropriately adopt a rule of law stated by court or commentator as formulate it himself. Although plaintiff's counsel now contends that the section did not state the law correctly, his arguments and citations do not convince us that error was committed, but in any event we do not find it necessary to pass on this question. He did not ask to have the jury recalled for further instructions, or point out any error in the charge as given, but only complained of the reading from the Restatement and said in substance that judicial decisions contrary to the text of the Restatement should prevail if such decisions existed. Even if plaintiff's counsel had at the time of the conference in the Judge's Robing Room objected to the law embodied in the charge, Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., precludes plaintiff from assigning any error that was not presented to the court before the case was finally submitted to the jury for that rule provides that: " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * " Indeed, such was the law as stated by Mr. Justice Brandeis in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, at page 486, 53 S.Ct. 252, 77 L.Ed. 439, before the Federal Rules of Civil Procedure were enacted.

■ It would greatly complicate and burden trials to juries if discussions between a trial judge and counsel after the jury has retired could be transmuted into requests to charge or objections to a charge, for such requests and objections under the Federal Rules must be made before the jury has retired. We see no indication that plaintiff's counsel specified any error in the legal instructions of the trial judge until after the verdict was received.

For the foregoing reasons, the judgment must be affirmed.