### CAPADONA v. THE LAKE ATLIN et al.
#### No. 12951–C.

United States District Court
S. D. California, Central Division.
Dec. 19, 1951.

Herbert Resner, Los Angeles, Cal., proctor for libelant.

Lillick, Geary & McHose and L. Robert Wood, Los Angeles, Cal., proctors for respondent Western Canada S.S. Co., Ltd.

ĮJAMES M. CARTER, District Judge.

This case presents the simple question,— does the case of Seas Shipping Co. v. Sie-racki, 1945, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, extend the obligation of seaworthiness to include not only a stevedore injured while working aboard the ship, but also to include a seaman who was injured while engaged in transferring fuel oil from a barge to the ship, while in the employ of the barge owners.

The libelant alleges that at the time of the injury, he was employed by the United Towing Company as a seaman and tankerman. On June 13, 1950, fuel oil was being transferred from his employer's barge to the S.S. Lake Atlin, one of the respondents. As part of his duties in helping to fuel the S.S. Lake Atlin he was compelled to board the vessel from the barge. For this purpose respondents provided a rope and wood Jacob's ladder, which was rigged to and hanging from the main deck of the vessel to the barge lying alongside. While descending from the vessel the ladder broke or gave way, causing libelant to fall and sustain the injuries of which he complains.

The libel alleges two grounds for recovery: (1) negligence and (2) unseaworthiness. Respondents except to the latter ground, claiming that libelant does not fall within the class of persons entitled to rely on unseaworthiness as a ground for recovery.

In the Sieracki case, the Supreme Court extended the doctrine of "unseaworthiness" to include those class of persons known as stevedores and longshoremen. This extension had been long overdue.

Respondent here contends that the Supreme Court meant to extend this humanitarian doctrine only to those class of persons known as stevedores or longshoremen. With this contention, we cannot agree. The language of the opinion clearly shows that the Supreme Court intended to extend the doctrine to all men who were performing marine service and were subject to its hazards. The court rejected the contention that liability rested on contract, and based its decision on the following:—
"* * * That the liability may not be either so founded or so limited would seem indicated by the stress the cases uniformly place upon its relation, both in character and in scope, to the hazards of marine serv-

ice which unseaworthiness places on the men who perform it. These, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone the resulting personal disability and loss, have been thought to justify and to require putting their burden, in so far as it is measurable in money, upon the owner regardless of his fault. Those risks are avoidable by the owner to the extent that they may result from negligence. And beyond this he is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost." 328 U.S. at pages 93–94, 66 S.Ct. at page 877. And, "On principle we agree with the Court of Appeals that this policy is not confined to seamen who perform the ship's service under immediate hire to the owner, *but extends to those* who render it with his consent or by his arrangement." 328 U.S. at page 95, 66 S.Ct. at page 877. [Emphasis added.]

Libelant here, engaged at the time of his injury in fueling the respondent vessel, was a person performing the ship's service with the consent or by the arrangement of the ship's owner. Historically, sails supplied the power of boats and were repaired by the ship's crew. Later steam supplied the power and now oil is the principal source of power for ships. Placing the oil aboard the ship would be a duty of the seaman but for arrangements made by the ship's owner to have it done by others. Those persons who are engaged to supply this fuel must board the vessel and are necessarily exposed to the same hazards and risks of the seamen. Since the exposure to harm is the same, whether the injured be seamen, longshoremen or as here, a tankerman, the risk of loss should be placed upon those who receive the benefit of the services which must be rendered and who are better able to absorb the costs.

The Supreme Court in the Sieracki case announced a broad and enlightened rule. In the light of their clear and explicit reasons for the extension of the doctrine of "unseaworthiness," we hold that the libelant herein was entitled to a seaworthy vessel on which to load oil.[1]

1. A study made of cases arising after the Sieracki case to determine how other courts have applied the doctrine there announced, is shown by the following résumé:
A. Recovery allowed in the following cases:
(1) Fodera v. Booth American Shipping Corporation, 2 Cir., 1947, 159 F.2d 795. Longshoreman injured while stowing cargo.
(2) Lauro v. United States, 2 Cir., 1947, 162 F.2d 32. Longshoreman killed while signalling atop the covered part of hatch.
(3) Cannella v. Lykes Bros. S. S. Co., 2 Cir., 1949, 174 F.2d 794. Longshoreman injured when falling from unseaworthy Jacob's ladder.
(4) Gill v. United States, 2 Cir., 1950, 184 F.2d 49. Stevedore killed by unseaworthy crane.
(5) Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555. Longshoreman injured on shore by unseaworthy equipment.
(6) The S. S. Samovar, D.C.S.D.Cal. 1947, 72 F.Supp. 574. Longshoreman injured because of unseaworthy "Pad Eye."
(7) Landgraf v. United States, D.C.E.

D.Pa.1947, 75 F.Supp. 58. Carpenter of an independent contractor which was engaged to load the vessel.
(8) Moragnel v. Moore-McCormack Lines, Inc., D.C.D.Md.1948, 75 F.Supp. 969. Stevedore injured when ladder broke.
(9) Bow v. Pilato, D.C.S.D.Cal.1949, 82 F.Supp. 399. Laborer in a cannery who went aboard ship at request of owner to repair engine. Case decided on question of negligence of another seaman.
(10) Bochantin v. Inland Waterways Corp., D.C.E.D.Mo.1951, 96 F.Supp. 234. Employee of a shipper where the employee was not a regular stevedore or employed by a stevedore company.
B. Cases where by dicta recovery would have been allowed if ship unseaworthy:
(1) Meyers v. Pittsburgh S.S. Co., 6 Cir., 1948, 165 F.2d 642. Employee of dry dock owner engaged in repairing ship in dry dock.
(2) Gibbons v. United States, 1 Cir., 1950, 186 F.2d 488. Employee of independent contractor engaged in cleaning up ship.
(3) Eagle Indemnity Co. v. United States Lines Co., D.C.D.Md.1949, 86 F. Supp. 949, said that a "ship ceiler" and

The exceptions are overruled. Libelant will present an order pursuant to the rules of this court.

"carpenter" would be entitled to the doctrine.

(4) Christiansen v. United States, D.C. D.Mass.1951, 94 F.Supp. 934, said that a "cleaner" employed by an independent contractor would be entitled to the doctrine.

C. Cases denying recovery:

(1) Lynch v. United States, 2 Cir., 1947, 163 F.2d 97, 99. Held that electrician's helper not entitled to recover since ship owner had surrendered control of the ship to independent contractor before injury. In a concurring opinion by Judge L. Hand, the following comment was made, "the * * * Sieracki [case] covers stevedores, but the employees of a contractor still remain 'business guests,' * * * and are not entitled to a seaworthy ship under the doctrine of the Osceola. * * * " (Note, it was this statement that has been followed by the courts in the Second Circuit.)

(2) Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352. This case denied recovery to a sub-contractor's employee engaged in cleaning the boilers and tanks. The question of unseaworthiness was not raised. Here again Judge L. Hand made the statement that the Sieracki case would not apply even if it had been raised.

(3) O'Connell v. Naess, 2 Cir., 1949, 176 F.2d 138. Held that the Sieracki case did not apply to a rigger of a contractor employed to remove a piston from a diesel engine.

(4) Vitozi v. Balboa Shipping Co., Inc., D.C.Mass.1946, 69 F.Supp. 286. Held that a longshoreman could not recover from the ship owner for injuries due to unseaworthiness after the owner had chartered to plaintiff's employer who had complete control of ship.

(5) Armento v. United States, D.C.N. Y.1947, 74 F.Supp. 198. Held that a shore carpenter whose employer was engaged to make repairs on ship could not recover under the Sieracki doctrine. Followed Judge Hand's concurring opinion in the Lynch case, supra.

(6) Peterson v. United States, D.C.S.D. N.Y.1947, 80 F.Supp. 84. Held an employee of a contract repairman could not recover. Followed the Lynch case, supra.

(7) Cioffi v. New Zealand Shipping Co. Ltd., D.C.S.D.N.Y.1948, 80 F.Supp. 98. Held that a ship's carpenter employed by an independent contractor could not recover. Followed the Lynch case, supra.

(8) De La Pena v. Moore-McCormack Lines Inc., D.C.S.D.N.Y.1948, 84 F.Supp. 698. Held a "cleaner" could not recover.

It is interesting to note that all the cases denying recovery (with the exception of Vitozi v. Balboa Shipping Co. Inc., have been decided in the Second Circuit and stem from the language used by Judge L. Hand in his concurring opinion in the Lynch case, supra, subd. C of footnote. This opinion is persuasive but certainly not controlling.