**John P. FLANAGAN, Libelant,**

v.

**THE Scow H. F. GILLIGAN, her engines, boilers, apparel and furniture, and New York Trap Rock Corporation and Red Star Towing & Transportation Corporation, Respondents.**

United States District Court
S. D. New York.

Oct. 10, 1958.

See also 170 F.Supp. 217.

Harry Ruderman, Henry Isaacson, New York City, for libelant.

Foley & Martin, New York City, Edward J. Ryan, New York City, of counsel, for respondents.

EDWARD WEINFELD, District Judge.

Red Star Towing & Transportation Corporation, one of the respondents, excepts to the second amended libel on the ground that it fails to allege a cause of action against it. The question presented is whether the obligation of seaworthiness extends from a tug owner to a seaman, who is not his employee, and who is injured on board a scow which is in tow of the tug, such injuries allegedly being due to the unseaworthy condition of the tug with respect to which the seaman performed no service.

The facts are as follows: Flanagan, the libelant, was employed by the respondent New York Trap Rock Corporation as captain aboard its scow, the "H. F. Gilligan". He alleges that he was injured on December 14, 1953 while the "Gilligan" and three other scows were in tow by the "Boston", a tug owned by

the respondent Red Star Towing & Transportation Corporation. Originally, Flanagan filed a libel against his employer, New York Trap Rock Corporation and the scow "H. F. Gilligan" charging, in a single cause of action, negligence and unseaworthiness. Subsequently, on September 17, 1957, more than three years after the date of his alleged injuries, he filed an amended libel which contained a new allegation adding Red Star Towing & Transportation Corporation and its vessel the tug "Boston", as respondents. Except for this and an allegation setting forth the corporate existence of Red Star and its place of business the substance of the original libel remained unchanged.

The respondent Red Star filed exceptions to the amended libel which were sustained by Judge Edelstein who held that there was no basis for a claim against it grounded on unseaworthiness.[1]

Since the amended libel also alleged negligence, the libelant was granted leave to file a further amended libel pleading facts showing special circumstances excusing the delay,[2] or, in the alternative, setting forth a claim against Red Star based upon unseaworthiness. Libelant chose the latter alternative and in his second amended libel attempts to allege a cause of action against Red Star based only upon unseaworthiness. Clearly, by confining his claim to unseaworthiness, his purpose was to obtain the benefit of New York State's six year Statute of Limitation and also to throw the burden of showing prejudice upon the respondent.[3]

In substance, the second amended libel charges that Red Star's tug "Boston" was towing four scows including the one on which libelant was employed; that libelant was injured on the scow in the course of his employment "while attempting to attract the attention of the tug 'Boston' during a storm and while libelant's scow was rolling and pitching". The libelant further alleges that the occurrence was due to the tug "Boston's" unseaworthiness in that the respondent Red Star failed to provide it with an adequate, competent and efficient crew. The libel contains no allegation that libelant rendered any service aboard, or to, the tug "Boston".

The basic question is whether the respondent Red Star, as the owner of the tug "Boston", owed libelant the duty of seaworthiness. I think not. While the warranty of seaworthiness has been expanded in recent years to include within its scope longshoremen and others who, though not in employ of the shipowner, performed the traditional services of crew members,[4] no case has gone so far as to hold that the doctrine extends to a non-crew member who does not perform a function traditionally performed by crew members with respect to the ship. However, libelant urges that since his scow had no independent choice of movement but was under the direction and control of the tug, the tow in effect was part of the tug and consequently the warranty of seaworthiness of the tug extended to him. Apart from the fact that the libel contains no such allegation, this theory finds no support in the rationale which extended the doctrine of seaworthiness to employees other than seamen.

Cases permitting recovery against nonemployer shipowners such as Imperial Oil, Ltd. v. Drlik, 6 Cir., 1956,

1. Flanagan v. The H. F. Gilligan, D.C. S.D.N.Y., 158 F.Supp. 393, 1958 A.M.C. 899.

2. In not filing the libel within three years under the negligence count. Redman v. United States, 2 Cir., 1949, 176 F.2d 713. The alleged injury occurred in navigable waters in New York State.

3. See N.Y.Civil Practice Act, § 48, subd. 3. See also Le Gate v. The Panamologa, 2 Cir., 1955, 221 F.2d 689; Oroz v. American President Lines, 2 Cir., 259 F.2d 636.

4. Alaska Steamship Co. v. Peterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

234 F.2d 4; Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F.2d 555; Capadona v. The Lake Atlin, D.C.S.D.Cal. 1951, 101 F.Supp. 851, which libelant claims are analogous to the present case are readily distinguishable. In each the libelant or plaintiff was found to be performing "crew's work" in the ship's service. The facts alleged in this libel fail to support any such claim. Accordingly, the exception is sustained.

The libelant in his claim against respondent Red Star fails to allege any facts as to the nature of his services. It may well be that the services required of him were such as to bring him within the protection of the seaworthiness doctrine. Under the circumstances, if the facts warrant it, he is given leave to serve a further amended libel. Cf. Nagler v. Admiral Corporation, 2 Cir., 1957, 248 F.2d 319, 322.