## THE HINDUSTAN.

District Court, E. D. New York. January 29, 1930.

Philip A. Brennan, of Brooklyn, N. Y. (F. S. Lyke, of Brooklyn, N. Y., of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Vernon S. Jones, of New York City, of counsel), for respondent.

GALSTON, District Judge. This cause arises out of personal injuries sustained by the libelant while working as a carpenter on the steamship Hindustan on October 31, 1924.

He was employed by the Mutual Lumber Company, which company had entered into a contract with the steamship company, to make certain repairs to the steamship Hindustan while lying at the Erie dock in Jersey City.

On arrival at the ship on the evening in question, he was ordered to work in the 'tween deck of hatch No. 4. The only lights supplied by the steamer were electric clusters in the various hatches. It appears that these clusters of lights were so suspended as to be moveable up and down the hatch. The particular cluster in hatch No. 4 was being used by men who were working in the hold, and, since there were no fixed lights, electric or otherwise, provided for by the steamer in the 'tween deck, the Mutual Lumber Company furnished its employees with candles, which were used by them while working.

With some others of the carpenter crew the libelant had finished his work at about 5 o'clock, a. m. and was sitting on the floor of the 'tween deck waiting for orders to "knock off work." Up to within a period of 20 minutes prior to receiving such orders the candles were burning. As the men got ready to leave, the 'tween deck was in darkness. There is some reference to a flash-light which Beckley, the foreman of the Mutual Lumber Company, carried at the time he came down the hatch to order the men to leave the 'tween deck. To what extent he used it on that deck is uncertain.

On his way past the open hatch, the libelant struck against a short cleat on the floor which projected from the combing of the hatch. This caused him to stumble, and he fell through the hatch a distance of 35 feet to the bottom of the hold.

The question which arises is whether the respondents were negligent in failing to provide adequate lights for the men safely to work. There was conflicting testimony as to the existence of a controlling custom in the port of New York with respect to such duty of the steamship company to employees of an independent contractor. The witness Beckley testified that he expected to get light where he worked, and that such light should have been furnished by the ship. He talked with an officer of the ship about lights, and was told that the cluster lights were the best that the ship could provide—one cluster for each hatch.

The assistant foreman Ross also testified that it was the custom for ships to furnish lights for independent contractors. I am not convinced that there was such a custom. Assuming, however, that such a custom existed, if Beckley found that the ship had failed to provide adequate lighting, it was within his election to refuse to permit his men to work under conditions of hazard. This, indeed, in substance was said in The Esperanza De Larrinaga (C. C. A.) 248 F. 489.

But Beckley is contradicted by the chief officer of the respondent. This officer testified that specific arrangements had been made with the Mutual Lumber Company that the ship should furnish one cluster light for each hold, and that the Mutual Lumber Company should furnish whatever other light was needed. It is undisputed that the Mutual Lumber Company did furnish the candles.

Apparently there was enough candle-light so provided to enable the men to complete their work, and, indeed, enough to last after the work was completed in the 'tween deck of hatch No. 4 until within 20 minutes of the accident. Then word came that there were no more candles. The libelant and the members of his crew were at that time sitting on the floor of the 'tween deck waiting apparently for the foreman to come down. The electric light cluster at that time was shining down into the feeder where the Mutual Lumber men had placed it. There was no effort made by Beckley, before going down the ladder to the 'tween decks, to lift the reflector out of the feeder so that its light might shine into the 'tween decks, although he knew that his men were waiting there in darkness for him.

Since it was within Beckley's power to light the 'tween decks with the cluster light provided by the ship, and since he failed so to do, knowing that there were no more candles for use by the men in the 'tween decks to guide them from the 'tween decks, it would seem that the accident was due to the negligence of the Mutual Lumber Company.

It is significant that, when the work was completed, the candles were still lighted. It was Beckley who determined to have the men remain in the 'tween decks doing nothing, *so that they could all unjustly make money from the shipowner by charging full time until 6 o'clock.*

Aside from any question of custom, which, as I have explained, I do not find existed, the cases seem to hold that the duty of supplying light was on the independent contractor and not on the shipowner.

It is, of course, true that a vessel must furnish a safe place in which workmen are required to perform their services, and also a reasonably safe passage to and from such place, but, as was said in The Clan Graham (D. C.) 163 F. 961, 966: "When it has employed an independent contractor to load and stow the cargo, and has turned the ship over to the contractor in a safe condition, then it is relieved of any fault that may arise through the work of the servants of the contractor; the rule being that a vessel in charge of stevedores or independent contractors is not liable in admiralty to such stevedores or independent contractors, or to their employees, for injuries, unless a contractual relation exists between the vessel and the person injured, or on account of the failure on the part of the owner, or those in charge of the navigation of the vessel, to perform maritime duty or obligation, as a result of which injuries are received. The Saranac (D. C.) 132 F. 936. To the same purpose, see The Auchenarden (D. C.) 100 F. 895, and The Thyra (D. C.) 114 F. 978. See, also, The William F. Babcock (D. C.) 31 F. 418; The Theresina (D. C.) 31 F. 90; The Argonaut (D. C.) 61 F. 517; The Louisiana, 74 F. 748, 21 C. C. A. 60.''

There is no doubt from the testimony that the Mutual Lumber Company was an independent contractor, and that there existed no relationship of master and servant between the libelant and the ship. The Mutual Lumber Company controlled its men; the ship did not. The libelant was under no duty to take orders of any kind

from the ship. See, also, The Satilla (C. C. A.) 235 F. 58.

The libel should be dismissed; and a decree may be had accordingly.