Emma Riley, as Administratrix of the Estate of William Riley, Deceased, Respondent, *v.* Agwilines, Inc., Appellant.

Submitted February 17, 1947; decided May 22, 1947.

*Ray Rood Allen* for appellant. Having turned over the vessel in safe condition to the contracting stevedore, the steamship company is not liable for the stevedore's negligence toward its employee in leaving the hatch unguarded and unlighted during the progress of the stevedoring work. (*The Clan Graham*, 163 F. 961; *The Hindustan*, 37 F. 2d 932, 44 F. 2d 1015; *Willis v. Lykes Bros. S. S. Co.*, 23 F. 2d 488; *Long v. Silver Line*, 48 F. 2d 15; *The Kongosan Maru*, 292 F. 801; *May v. 11½ East 49th St. Co.*, 269 App. Div. 180, 296 N. Y. 599; *Engel v. Eureka Club*, 137 N. Y. 100; *Water Company v. Ware*, 16 Wall. 566; *Weinfeld v. Kaplan*, 282 N. Y. 348; *English v. Merroads Realty Corp.*, 283 N. Y. 93; *Caldwell v. Wildenberg*, 228 App. Div. 557.)

*Jacquin Frank* and *David M. Fink* for respondent. I. Defendant, having control of the pier, ship, ship's electric power, outlets, extension cables and lights, is legally responsible for the dangerous condition that was created. It was defendant that created that condition. (*Sulovitz v. United States*, 64 F. Supp. 637; *Seas Shipping Co. v. Sieracki*, 328 U. S. 85; *May v. 11½ East 49th St. Co.*, 269 App. Div. 180; *The Helios*, 12 F. 732; *The Protos*, 48 F. 919; *Sansol v. Compagnie Generale Transatlantique*, 101 F. 390; *Drowne v. Great Lakes Transit Corp.*, 5 F. 2d 58; *The Joseph B. Thomas*, 86 F. 658; *Hamburg-Amerikanische Packetfahrt A. G. v. Gye*, 207 F. 247; *Gerrity v.*

*Bark Kate Cann,* 2 F. 241; *The Adour,* 21 F. 2d 858; *La Guerra* v. *Brasileiro,* 124 F. 2d 553.) II. The obligation of a vessel towards its longshoremen is similar to that of a master and servant relationship, particularly so in the instant case because of the ownership and control of all facilities. (*Grillo* v. *Royal Norwegian Government,* 139 F. 2d 237; *Devaney* v. *Degnon-McLean Constr. Co.,* 79 App. Div. 62, 178 N. Y. 620; *Phillips Petroleum Co.* v. *Manning,* 81 F. 2d 849; *Simpson* v. *Atlantic Coast Shipping Co.,* 191 App. Div. 844, 232 N. Y. 533; *Dorney* v. *O'Neill,* 60 App. Div. 19, 172 N. Y. 595; *Kennedy* v. *Cunard Steamship Co.,* 197 App. Div. 459, 235 N. Y. 604; *Smith* v. *Luckenbach,* 155 App. Div. 451; *The Spokane,* 294 F. 242; *The No. 34,* 25 F. 2d 602.)

THACHER, J. This is an action for wrongful death of plaintiff-respondent's intestate, William Riley, who, while working as a stevedore on the S.S. *Medina,* owned, operated and controlled by defendant-appellant, fell through an uncovered hatch in an unlighted part of the deck immediately below the top deck of the vessel.

Riley was one of a number of longshoremen employed by the Jarka Corporation, a contracting stevedore which was engaged in removing ballast and cargo from the S.S. *Medina* moored at a pier in New York Harbor. One gang of these longshoremen, of which Riley was a member, worked on the upper 'tween deck at number 3 hatch under a gang foreman who was also an employee of Jarka. Another gang, also employees of Jarka, were engaged in similar work on the same deck at number 2 hatch under another foreman employed by Jarka. The men in Riley's gang were able to step down from the main deck at number 3 hatch on to sand ballast which was covered with a layer of discarded military clothing. Riley and the other members of his gang proceeded during the day to remove the discarded military clothing by pushing it toward the number 2 hatch, where the gang engaged there put this material in slings and with the ship's winches and tackle discharged it on the dock. When the clothing had been thus disposed of, Riley and his gang shoveled the ballast, consisting of sand and rocks, into tubs which were raised through the number 3 hatch and dumped into lighters alongside the ship. At about 7:30 P.M. it began to get

dark and two lights were placed in number 3 hatch, one inshore and one offshore. With the aid of these lights the men in Riley's gang continued to work until about a quarter to ten. Shortly before that Riley was seen to walk in the direction of number 2 hatch, for what purpose is not clear, but the only means of egress from the hold where the men were working was a ladder near the edge of number 2 hatch on the 'tween deck. When the men in Riley's gang quit work they proceeded in the direction of number 2 hatch on the 'tween deck. The place being dark, they called for a light, which was let down to them on a cable through a manhole near number 2 hatch. This light disclosed the fact that the hatch was uncovered and Riley was seen lying below, where he had fallen through the hatch. The hatch covers had been removed by members of the gang working under number 2 hatch, pursuant to directions of their foreman employed by Jarka.

When it got dark this gang called for lights and a light was lowered to them through the open main deck number 2 hatch. When these men had cleaned up the ballast under number 2 hatch on the 'tween deck they were directed by their foreman to remove the hatch covers on that deck, and when that had been done, shortly before 9 o'clock, they proceeded to the main deck by means of the manhole and the ladder near number 2 hatch. Still acting under the directions of their foreman, they replaced the covers of number 2 hatch on the main deck. This operation, of course, required removal of the lights which had been hung on cables in the open hatch and consequently the 'tween deck was left without light near the number 2 hatch which was left open. When the men from number 3 hatch needed light at number 2 hatch they called for it and a light was let down to them through the manhole.

The question of law presented is whether under these facts — which are not in dispute — the owner of the ship became liable for the wrongful death of Riley.

Since it is beyond the power of the State by legislation or judicial decision to mold or modify the maritime law (*Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149), we must look to the decisions of the Federal courts to define the liabilities of shipowners for maritime torts, leaving out of consideration decisions of our own courts or statutes of the State which conflict with the

rules of liability established in the Federal courts. (*Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U. S. 449, overruling *Maleeny* v. *Standard Shipbuilding Corp.*, 237 N. Y. 250.)

In *Kuhn* v. *City of New York* (274 N. Y. 118) an action to recover damages for wrongful death under section 130 of the Decedent Estate Law was brought by the administratrix of the estate of Francis Kuhn. While Kuhn and other employees of a contractor and a subcontractor engaged in work for the city on Riker's Island were being transported to work across the East River on the S.S. *Observation,* her boilers blew up and a number of the men, including plaintiff's intestate, were killed. Kuhn was an employee of the subcontractor. The suit was against both the general contractor and Kuhn's employer, the subcontractor. The trial court dismissed the complaint as against Kuhn's employer and there was a verdict for the plaintiff against the general contractor. Thus the action was not founded on a contract of employment and recovery was sought against the general contractor as against a stranger to the employment on the usual grounds of negligence claimed to be available in such an action. But the only claim of negligence was that a defective boiler rendered the vessel unseaworthy. We held: '' Because of the location of the accident, the matter was not of local concern and the substantive rights and obligations of the parties arose not out of the local law of New York State, but under the maritime law of the United States (*Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U. S. 449; *Messel* v. *Foundation Co.*, 274 U. S. 427, 429), while any appropriate remedy afforded by the common law and the New York State death statute is saved. (U. S. Code, tit. 28, § 41[3]; Dec. Est. Law, § 130; *Waring* v. *Clarke, supra* [5 How. (U. S.) 441]; *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372.) Notwithstanding the State court has concurrent jurisdiction with the Federal courts to entertain the suit (*Messel* v. *Foundation Co., supra*; *Kellogg & Sons, Inc.*, v. *Hicks*, 285 U. S. 502, 514) and the action is brought in the State court, the principles and rules of the substantive maritime law are alone to be applied as ground, if any, for recovery. (*Robins Dry Dock & Repair Co.* v. *Dahl, supra; Chelentis* v. *Luckenbach S. S. Co., supra; Southern Pac. Co.* v. *Jensen*, 244 U. S. 205.) '' (Pp. 129-130.) That was — as this is — an action for wrongful death under the local

State statute which affords an appropriate remedy but does not modify the substantive maritime law upon which the rights and obligations of the parties arise. We are not unmindful of the recent decision in *Puleo* v. *H. E. Moss & Co.* (159 F. 2d 842 [C. C. A. 2d, 1947]), where an action was brought for wrongful death arising under the New York statute. If there is anything in that case contrary to our decision in *Kuhn* v. *City of New York* (*supra*) we are nevertheless constrained to reaffirm the rule there stated, since the decision in that case was predicated upon our understanding of the applicable decisions of the Supreme Court of the United States.

The instant case went to the jury on instructions that the shipowner was under an absolute nondelegable duty to see that light was furnished at number 2 hatch on the 'tween deck and could not relieve itself of that duty by showing that it had engaged Jarka, the stevedoring corporation, to do the work. Exception was taken to these instructions.

The 'tween deck was a safe place for the men to work when the longshoremen, employees of Jarka, took over the work of unloading ballast. It remained entirely safe until the covers at number 2 hatch on the 'tween deck were removed and the place became dark. It was Jarka and not the shipowner who removed the hatch covers and left the hatchways unguarded and unlighted. The ship was equipped with ample facilities for supplying completely adequate light and there were available to the longshoremen lights which could be and were let down on long cables to light the places where the men were working on the 'tween deck. These facts are not in dispute. The maritime law imposes no liability upon the vessel or its owner when a longshoreman employed by a stevedoring corporation engaged in loading or discharging the vessel is injured because of the manner in which the longshoremen carry on the work or because of their failure to use appliances furnished for their use, including lights available for lighting the 'tween decks or other parts of the ship where the work is done. (*The Hindustan,* 37 F. 2d 932 [D. C.], affd. 44 F. 2d 1015 [C. C. A. 2d] *Long* v. *Silver Line,* 48 F. 2d 15 [C. C. A. 2d]; *The Omsk,* 266 F. 200, 201 [C. C. A. 4th]; *The Clan Graham,* 163 F. 961 [D. C. Ore.], cited with approval in *Long* v. *Silver Line, supra.*) Nor is there negligence in leaving open a cargo hatch while the vessel is in port (*Smith* v. *United*

*States,* 18 F. 2d 111 [C. C. A. 2d]; *The Saratoga,* 94 F. 221 [C. C. A. 2d]; *The Kongosan Maru,* 292 F. 801 [C. C. A. 9th]; *The Louisiana,* 74 F. 748 [C. C. A. 5th]). Hatches must be removed to receive and discharge cargo and to ventilate the ship while in port. The vessel must be seaworthy; its equipment and tackle and machinery must be in order, and if there be defects in such gear resulting in personal injuries the operator of the ship will be liable, not only to the members of the crew but to stevedores as well (*Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85). There were no such defects in this case and the lights were at hand. They were tools furnished for use in the safe conduct of the work and if not used the negligence was not that of the ship or its owner.

Nor was there any evidence of affirmative negligence on the part of the officers of the ship. When the hatch covers were replaced on number 2 hatch on the main deck, the lights hanging in the open hatch were necessarily removed. That was an incident unavoidable in the progress of the work and, whether performed by a longshoreman or by a member of the crew, was not negligence so long as the lights were available when called for by the men working below. The fact that lights were let down through the manhole when called for demonstrates that they were at hand available when needed.

Under these circumstances the shipowner was entitled to a dismissal of the complaint.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LOUGHRAN, Ch.J., LEWIS, DESMOND, DYE and FULD, JJ., concur; CONWAY, J., taking no part.

**Judgments reversed, etc.**