### LYNCH v. UNITED STATES et al.
#### No. 243, Docket 20561.

Circuit Court of Appeals, Second Circuit.

July 3, 1947.

Nathan Baker, of Hoboken, N. J. (William T. Cahill, of Jersey City, N. J., on the brief), for libellant-appellant.

Ray Rood Allen, of New York City (John F. X. McGohey, U. S. Atty., Burlingham, Veeder, Clark & Hupper, and C.B.M. O'Kelley, all of New York City, on the brief), for respondent-appellee United States.

Frank A. Bull, of New York City (Duncan & Mount and Daniel Huttenbrauck, all of New York City, on the brief), for respondent-impleaded-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal requires definition of the scope of the duty of a shipowner to employees of an independent contractor working on its ship. On August 15, 1944, libellant's husband, the decedent Lynch, was an electrician's helper employed by Bethle-

hem Steel Company, which had a contract to repair the cargo vessel "Ben F. Dixon" owned by the United States. From one o'clock that afternoon until the happening of the accident here involved Bethlehem was in control of all or part of the ship, including No. 5 hatch. The ship's crew performed no work at hatch No. 5 during that day and night. During the afternoon some of the employees of Bethlehem removed part of the cover of that hatch in connection with their work. Bethlehem's work there continued until at least 5 P.M., and that area was not turned back to the shipowner's control before the accident, nor was the section of the hatch cover replaced. At 10 P.M., Lynch boarded the ship and commenced work in the gun crew quarters aft on the starboard side of the ship. At 3 A. M., he and his electrician started ashore for a drink of water. A clear-lighted passageway was provided along the portside of the ship. Nevertheless they chose instead to proceed to the gangway, which was on the portside amidships by crossing hatch No. 5, which was unlighted. Lynch, however, fell into the hatch opening and was killed.

■ These facts were found by the District Court, and there is adequate evidence to support all of them. Indeed the only strongly contested fact concerns a light hung on a boom rest aft of No. 5 hatch above the hatch opening. Libellant's evidence was that this light was in position and was removed before the accident by employees of the respondent. Respondent's evidence was that the light was hung there only after the accident to aid in the recovery of Lynch's body, and the court so found.

Lynch's wife, as his administratrix, filed a libel for his death against the United States and the War Shipping Administration, the vessel's operator,[1] under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. The United States impleaded Bethlehem as a party respondent on the ground that Bethlehem's negligence caused the accident. After a trial the District Court dismissed both the libel and the impleading petition, and libellant appeals.

■ The scope of a shipowner's duty to longshoremen employed by a contract stevedore in loading and unloading the ship was recently discussed by this court in Lauro v. United States, 2 Cir., 162 F.2d 32. It was there pointed out that the shipowner must provide the longshoremen with a seaworthy ship and a safe place to work. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. It was further pointed out, however, that when he surrenders control of part of his ship to the stevedore his duty as to the part surrendered extends only up to the time the stevedore assumes control. Grasso v. Lorentzen, 2 Cir., 149 F.2d 127, 129, certiorari denied 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444; Riley v. Agwilines, Inc., 296 N.Y. 402, 73 N.E.2d 718; Muscelli v. Frederick Starr Contracting Co., 296 N.Y. 330, 73 N.E.2d 536, citing Vitozi v. Balboa Shipping Co., D.C.Mass., 69 F.Supp. 286. If thereafter the agents of the stevedore cause a dangerous condition, the owner is not liable for accidents resulting from it. Lauro v. United States, supra. It is unnecessary to speculate whether the shipowner's duty to an employee of a contract repairman is lesser than or as great as that to the employee of a contract stevedore. For assuming it is as great, libellant cannot recover from the United States here. This follows because the dangerous condition, the unlighted open hatch, was caused by Bethlehem's employees after Bethlehem had assumed control of at least that portion of the ship.

■ Libellant cannot recover from Bethlehem in this suit; her only relief against it lies under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901. And Bethlehem concedes here that it is obligated to pay her compensation in an appropriate proceeding.

Affirmed.

---

[1] In its answer the United States raised an issue of the suability of the War Shipping Administration, which did not appear. This was not decided by the court below, and we need not discuss it here. See Benevento v. United States, 2 Cir., 160 F.2d 487; Land v. Dollar, 67 S.Ct. 1009, 1012, 1013.

L. HAND, Circuit Judge (concurring).

The doctrine of Seas Shipping Co. v. Sieracki,[1] covers stevedores, but the employees of a contractor still remain "business guests," as I understand it, and are not entitled to a seaworthy ship under the doctrine of the Osceola.[2] The duty to them is therefore only to advise them of any known dangers, or any that would have been discovered by reasonable care. This duty is sometimes put as though it was the same as providing a safe place to work, but, strictly speaking, that is not true. The shipowner is not responsible for giving them a safe place to work; all he need do is to discover any dangers and tell them. Practically, there is probably not very much difference between the two duties. In Hardie v. New York Harbor Dry Dock,[3] we held that, if there was a safe way provided for an employee of a contractor, and he chose an unsafe way, the owner was absolved. That was right, as applied to the facts of that case, but I doubt that it would be safe to say that the mere existence of one safe way was always a complete exoneration. That depends, I think, upon the likelihood that the employees would not take the unsafe way; if there was a reasonable probability that they might do so, I think the shipowner's duty extends to reasonable care to see what dangers lurk in the other way, and to advise the employees of them. Our decision in Holm v. Cities Service Co.,[4] is to be explained in this way also, I should suppose.

Therefore it is not enough here that Johnson, the Bethlehem employee, provided a well-lighted passage from the port door of the gun room along the port side of the vessel to the gangway. If the course which Lynch actually took was one which the shipowner might have supposed an employee would take, and, if reasonable care would have detected the absence of the hatch cover, I should hold that liability was established. However, I cannot find that the libellant proved those facts. Even though we assume for argument that the officers should have seen that it was probable that men, working in the gun room, might not choose the better of the two ways to reach the gangway, but might cross the hatch, there was no evidence to charge the owner with notice that the hatch cover was off. Reynolds and Soderling each tried to prove that there were seamen sleeping on the hatch, and, for argument, I will assume that they succeeded; but they had no duty and did not charge the owner. There were no officers on board after five P.M.; the chief officer only had three or four men on board and he was the only officer at any time. Since the hatch cover was taken off by employees of the Bethlehem Company, the only possible liability would be that the chief, before he left at five P.M., should have seen that the hatch cover was off and have had it replaced. As the work was going on all through the night, and some of it was in the hold in No. 5 hatch, there would have been no reason for him to do this, even if he had seen the hatch cover off before five P.M., for he might properly have expected the men at work to replace it when they were done. But there is no evidence that he saw the hatch cover off before he left, or that it was off before then. Therefore, even if we impose a duty upon him, had he seen it off, the libellant did not make out her case.

[1] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.
[2] 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.
[3] 2 Cir., 9 F.2d 545.
[4] 2 Cir., 60 F.2d 721.