## STRIKA v. HOLLAND AMERICA LINE et al.

## HOLLAND AMERICA LINE et al. v. JARKA CORPORATION.

United States District Court
S. D. New York.
May 12, 1950.

Sylvia Miller, New York City, Chester A. Hahn, New York City, of counsel, attorney for plaintiff.

Reginald V. Spell, New York City, Olin S. Nye; New York City, of counsel, attorney for defendant and third party plaintiff, Holland America Line.

George A. Garvey, New York City, G. J. Conway, New York City, of counsel, attor-

ney for defendant, Netherlands Ministry of Traffic Directorate General of Shipping.

Burlingham, Veeder, Clark & Hupper, New York City, C. H. Merritt, New York City, of counsel, attorneys for defendant, Rotterdam Lloyd Steamship Company.

John P. Smith, New York City, Albert S. Commette, New York City, of counsel, attorney for defendant, The Jarka Corporation.

IRVING R. KAUFMAN, District Judge.

A special verdict was rendered by the jury in this action. The plaintiff Thomas Strika and the defendant Netherlands Ministry of Traffic Directorate General of Shipping, the only parties remaining in this action, have moved for judgment in their favor, respectively, on the special verdict.

Plaintiff brought this action to recover damages for personal injuries sustained by him on March 15, 1947, while he was working on a pier in Hoboken, New Jersey. Plaintiff at the time was foreman of a gang of longshoremen and had worked as a foreman for his employer, the Jarka Corporation for about 25 years.

On the day in question, Jarka was engaged in loading the S. S. Zuiderkruis which was moored to the pier. The S. S. Zuiderkruis was a victory ship which had been transferred from the United States Government to defendant Netherlands Ministry the preceding day. The two forward hatches of the ship were provided with "pontoon" hatch covers; that is these hatches were covered by means of large steel covers each of which was approximately six feet wide and twenty feet long and weighed over a ton.

The other hatches including the one on which plaintiff had been working during the day on March 15 were covered by means of the more common steel beams running thwartships with small wooden hatchboards covering the openings between the beams.

Plaintiff and his gang had finished their work on their own hatch at about 3 p. m. on this Saturday. As plaintiff was about to check out for the day, he was instructed by the deputy superintendent of the pier to help the gang at the No. 1 hatch replace the pontoon cover which had been removed in the morning and placed on the pier. He found another longshoreman at the hatch cover and the two placed the rings of two bridles, which they found attached to and lying on the hatch cover, on the lip hook of the fall which was suspended above the dock. The winchman started to raise the hatch cover and when it was up only a few feet, the ring of one of the bridles came off the lip hook and one end of the pontoon cover fell, striking plaintiff's leg, necessitating its amputation.

The action was originally commenced against the Holland America Line, the Rotterdam Lloyd Steamship Co., and the Netherlands Ministry of Traffic Directorate General of Shipping. The Netherlands Ministry impleaded the Jarka Corporation as a third-party defendant, and filed a cross-complaint against the Holland America Line. The Holland America Line filed a cross-complaint against the Jarka Corporation.

In the course of the trial it became evident that the only proper party defendant was the Netherlands Ministry, which owned and operated the vessel, and accordingly the actions against the other defendants were dismissed. The cross-complaint against the Holland America Line was withdrawn, and therefore that Company withdrew its cross-complaint against the Jarka Corporation. At the close of defendant Netherland Ministry's case for indemnity against the third-party defendant, Jarka Corporation, it was apparent that under no possible circumstances could the defendant recover from the third-party defendant, and hence the third-party complaint was dismissed.

The action therefore narrowed down to one by the plaintiff against the defendant Netherlands Ministry. The plaintiff charged the defendant with both unseaworthiness and negligence asserting that unsuitable and improper bridles were supplied by the ship for the purpose of lifting the pontoon hatch cover. The question was presented to the Court early in the trial whether a longshoreman injured while working on shore could recover for un-

seaworthiness, but since the possibility existed that the jury might find the defendant negligent, thereby eliminating the problem of unseaworthiness, the Court reserved decision on the question. The defendant as an affirmative defense claimed contributory negligence on plaintiff's part in the manner in which he used the bridles and caused the hatch cover to be lifted. A special verdict was employed by this Court in accordance with Rule 49 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in order that there might be a clear determination as to the basis of liability of the defendant; so that if defendant was liable it could be explicitly determined whether its responsibility grew out of either negligence or the doctrine of unseaworthiness, if the Court should find that doctrine applicable in this case. This clear cut determination could never have been made by utilizing a general verdict. The replies of the jury upon the questions presented by this Court indicate clearly the wisdom of employing a special verdict in the proper case. The questions given to the jury with appropriate instructions and their answers thereto follow:

(1) Did the defendant Netherlands Ministry of Traffic Directorate General of Shipping supply or provide the bridles used to lift the pontoon hatch cover? Answer—Yes.

(2) Were the bridles suitable for the purpose of moving or lifting pontoon hatch covers? Answer—No.

(3) Did the unsuitability of these bridles cause or contribute to the injury to the plaintiff? Answer—Yes.

(4) Did the defendant know or have reason to know that the bridles were unsuitable and that the use of the bridles might cause injury to someone such as the plaintiff? Answer—No.

(5) What are the plaintiff's damages due to the injury? Answer—$75,000.

(6) Did any fault on the part of the plaintiff, either by an action of his or a failure to act, contribute to his injury? Answer—Yes.

(7) What proportion or percentage of plaintiff's injury was due to his own fault? Answer—10%.

If the answer to question (4) had been "yes" and the answer to question (6) "no", then the Court would have found the defendant negligent and granted judgment for the plaintiff for the damages stated in answer to question (5). It is clear that the defendant cannot be found negligent on the basis of the answers given by the jury. However, on the answers (1), (2) and (3) the defendant can be found liable for supplying unseaworthy bridles which caused the injury if the doctrine of unseaworthiness is applicable to this case. If the doctrine is applicable then the damages found by the jury, to wit $75,000, would be reduced by 10% (answer to question (7)) and the recovery permitted would be $67,500. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, footnote 11, 66 S.Ct. 872, 90 L.Ed. 1099. The questions submitted to the jury were so framed by the Court as to make them simple and yet completely dispositive of the issues in the case—particularly with respect to unseaworthiness, negligence, damages, contributory negligence and the degree of same.

The question therefore before the Court is whether a longshoreman, engaged in loading a ship, who is injured while on the pier, has a cause of action for unseaworthiness against the shipowner. The plaintiff relies on the case of Seas Shipping Co. v. Sieracki, supra, which extended a shipowner's obligation of seaworthiness to a stevedore who was injured while aboard and loading the ship, but the defendant claims the issue has already been decided in the case of Swanson v. Marra Bros., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045, decided on the same day as the Sieracki case. The defendant's contention will be considered first.

In the Swanson case a longshoreman was injured while on a pier and engaged in loading cargo on a ship. He sued his employer, a stevedoring company, under the Jones Act, 46 U.S.C.A. § 688. The question as to whether a longshoreman could bring suit under the Jones Act had been specifically left undecided in the case of O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596. In that case the Court held that a seaman who

was doing repair work ashore on a conduit through which the vessel was unloading cargo and who while thus engaged was injured by the negligence of a fellow servant, has a right of recovery under the Jones Act.

With the situation squarely before them in the Swanson case, the Supreme Court denied the longshoreman on shore the benefits of the Jones Act. Their decision was based on the historical development of the rights of longshoremen under the Jones Act. In 1926 the Supreme Court in International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, had held that a longshoreman who was injured aboardship while storing cargo was a "seaman" for purpose of a suit under the Jones Act, and that he could recover under that Act against his employer. Congress evidently differed in their interpretation of the coverage of the Jones Act, for within six months after the Haverty decision, Congress enacted the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which gave a remedy against employers by way of compensation for disability or death suffered on navigable waters by any employee not a master or member of a crew of any vessel. The liability of employers to pay the prescribed compensation is exclusive and in place of all other liability of such employer to the employee at law or in admiralty. § 905. The Supreme Court in the Swanson case therefore felt that they could not "suppose that Congress, while explicitly denying a right of recovery under the Jones Act to maritime workers not members of a crew who are injured on board a vessel, either thought that the Jones Act extended to injuries inflicted on shore to employees not members of a crew * * * or intended that there should be established for such workers injured on shore, by extension of the doctrine of the Haverty case, a right of recovery which it at the same time withdrew from such workers when injured on navigable waters." 328 U. S. at pages 6–7, 66 S.Ct. at page 871, 90 L.Ed. 1045.

The Court held that the Longshoremen's Act "excludes from its own terms and from the Jones Act any remedies against the employer for injuries inflicted on shore" 328 U.S. at page 7, 66 S.Ct. at page 872, 90 L.Ed. 1045, and relegated these injured employees to the remedies afforded by the local law. It is therefore evident that the Swanson case in no manner implied the position that the Supreme Court would take on the permissibility of a suit by a longshoreman injured on shore against a shipowner, not his employer, for unseaworthiness. Furthermore, this question was specifically left open in the Sieracki case, 328 U.S. at page 99, footnote, 17, 66 S.Ct. at page 880, 90 L.Ed. 1099, where the Court said: "In this case we are not concerned with the question whether the same policy (unseaworthiness) extends to injuries incurred ashore by a stevedore engaged in the same work, a matter which is relevant however in Swanson v. Marra Brothers, Inc., No. 405, 328 U.S. 1, 66 S.Ct. 869 [90 L.Ed. 1045]; Cf. O'Donnell v. Great Lakes Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596."

The defendant would have the Court interpret the word "relevant" in the above quotation to mean "decided". This the Court cannot do, for it is clear that the Supreme Court, while referring to the Swanson case, left the question of the rights of the longshoreman under the seaworthiness doctrine open for future decision.

As already noted, the Supreme Court in the Sieracki case extended the remedy of seaworthiness, traditionally owed by shipowners to seamen, to a stevedore injured while working aboard the ship. The Court refused to limit the doctrine of unseaworthiness by the concept of the seamen's "contract" with his employer; instead it related the doctrine "to the hazards of marine service which unseaworthiness places on the men who perform it. These, together with their helplessness to ward off such perils and the harshness of forcing them to shoulder alone a resulting personal disability and loss, have been thought to justify and to require putting their burden, in so far as it is measurable in money, upon the owner regardless of his fault. * * * It is essentially a species of liability without fault * * *. Derived

from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character." 328 U.S. at pages 93–94, 66 S.Ct. 872, 877, 90 L.Ed. 1099.

The Court said further that seaworthiness "is a form of absolute duty owing to all within the range of its humanitarian policy" and that "this policy is not confined to seamen who perform the ship's service under immediate hire to the owner, but extends to those who render it with his consent or by his arrangement." 328 U.S. at page 95, see also page 97, 66 S.Ct. 872, 877, 90 L.Ed. 1099.

The scope of the doctrine of seaworthiness as expressed by the Supreme Court clearly embraces the longshoreman on the pier engaged in loading or unloading the ship, for, as the Supreme Court stated: "Historically the work of loading and unloading is the work of the ship's service, performed until recent times by members of the crew. * * * That the owner seeks to have it done with the advantages of more modern divisions of labor does not minimize the worker's hazard and should not nullify his protection. * * * Not the owner's consent to liability, but his consent to performance of the service defines its boundary." Sieracki case, 328 U.S. at page 96, 66 S.Ct. at page 878, 90 L.Ed. 1099.

Defendant believes the Sieracki case to have been wrongly decided and desires to have its coverage limited to the minimum, i. e. to allow the seaworthiness doctrine to be extended only to longshoremen working aboard ship. This Court, persuaded by the rationale of the Sieracki case, is impelled to the conclusion that to draw an arbitrary dividing line between a longshoreman injured on a berthed ship and one injured alongside the same ship would be without reality. If the requested arbitrary line were to be drawn, it would not be straining the imagination to foresee longshoremen working with one foot on and one foot off a greatly extended ship's ladder in order that they might come within the emasculated coverage of the seaworthiness doctrine.*

The words of the Supreme Court that the work of loading and unloading the ship is the work of the ship's service, and that all those who perform the ship's service with the owner's consent are covered by the seaworthiness obligation, leads this Court to the conclusion that all those who do the work of loading or unloading, whether seamen or longshoremen, aboard ship or on the dock, are covered by the doctrine of seaworthiness. On the basis of this conclusion and the special verdict of the jury, plaintiff Thomas Strika is entitled to judgment in his favor in the sum of $67,500.

Defendant makes one further contention, that an injury to a longshoreman ashore is not a maritime tort and that state law governs. This appears to be so. T. Smith & Son v. Taylor, 1928, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520; Minnie v. Port Huron Co., 1935, 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631; Brady v. Roosevelt S. S. Co., 2 Cir., 1942, 128 F.2d 169. The term applying the "law of the state" connotes that this Court should apply that law which the state courts would apply if the same problem were before them. The question has never come up in New Jersey, the state in which the injury occurred. This Court, however, is convinced that the courts of that state would undoubtedly follow the Supreme Court and federal decisions in this type case, and as a result consideration would be given by the New Jersey court to the extent of coverage of the seaworthiness doctrine in accordance with the Sieracki case, an end which this Court has achieved. Cf. Byrd v. New York Central System, 1949, 6 N.J.Super. 568, 70 A.2d 97; Riley v. Agwilines, Inc., 1947, 296 N.Y. 402, 73 N.E.2d 718; Brinkman v. Oil Transfer Corporation, 1949, 300 N.Y. 48. Surely if the Supreme Court had felt that the requirement of the application of "state law" would necessitate application

---

* The longshoremen would probably have to ascend the ladder to the ship and then descend before starting their work, since it appears that the ladder is part of the ship only when one is descending from the ship to the shore.

of the negligence law of the state and preclude coverage under the seaworthiness doctrine of the longshoreman working on the dock, it would have so stated in footnote 17 of the Sieracki case, instead of leaving the question open to future decision. Fundamentally the problem is not whether to choose between maritime law and state law, but rather whether a form of liability without fault will be applied in a certain set of circumstances.

Accordingly, motion by plaintiff for judgment in his favor on the special verdict is granted to the extent of $67,500. Defendant's motion for judgment in its favor on the special verdict is denied.