JOSEPH CARDINAL, Doing Business under the Name of CARDINAL ENGINEERING COMPANY, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 28951.)

Court of Claims, February 26, 1951.

*Thomas A. McDonald* and *James S. Tobin* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Marvin P. Lazarus* and *James G. Austin* of counsel), for defendant.

SYLVESTER, J. Claimant, insured by the New York State Insurance Fund against liability under the Workmen's Compensation Law, was impleaded as a codefendant in an action by his injured employees against a third party. Having settled his alleged liability in that action by the payment of $87,000, he brings this claim to recover that sum, together with $14,000 in legal fees, asserting that the liability comes within the coverage of his insurance policy with the State fund.

It appears that on January 2, 1945, claimant contracted with the United States of America, as owner and operator of a vessel, the S. S. *Hilton,* to convert the vessel's refrigeration compartment for the carrying of frozen cargo. Though Cardinal had been assured by the Government that the vessel's refrigeration system had been purged of ammonia, that safety precaution had been neglected. The ship's ammonia tank was still in place on the morning of January 3, 1945, its gauge showing pressure. Cardinal communicated this fact to the Government's agent and, in addition, ordered his own employees to remove the tank, but they neglected to do so. On the evening of January 3d, Cardinal's employees, at work in the refrigeration compartment, rushed out to avoid the effects of ammonia gas which was escaping from the tank, crowding one of the available exits. In the panic that ensued, seventeen of Cardinal's employees were injured and one died.

In due course, the compensation prescribed by the Workmen's Compensation Law was paid by the State fund to the injured employees. Thereafter they filed libels in the United States District Court against the United States of America as owner of the vessel, all of which were ultimately consolidated for trial in the Eastern District. In each case, the United States filed a petition impleading Cardinal, contending that Cardinal was answerable to the United States for any damage it might sustain. The State fund denied Cardinal's request that it assume the defense of these impleaders. Subsequently, the Federal actions culminated in a settlement by which a total of $145,000 was paid to libelants, of which $87,000 was paid by Cardinal and the remainder by the United States. It has been stipulated here that Cardinal reasonably expended the sum of $14,000 for legal fees in the defense of those actions which, together with the $87,000 paid in settlement, results in Cardinal's present claim against the State in the sum of $101,000.

The question to be determined is whether the coverage authorized by the Workmen's Compensation Law includes a liability

imposed upon Cardinal by way of indemnity to the United States in an action by his employees against the United States.

Under section one(a) of the policy, the claimant was insured against all liability under the Workmen's Compensation Law. This compensation has been paid and, accordingly, no issue arises as to the scope of the coverage provided by this clause. Under section one(b) of the policy, however, the State Insurance Fund agreed to indemnify the insured against loss by reason of liability imposed upon him by law for damages on account of injuries to his employees. The language of this clause, the validity and significance of which is vital to a determination of the issues presented, follows: (The State Insurance Fund) '' Agrees to indemnify this employer against loss by reason of any liability imposed upon him by law for damages on account of such injuries to such employees wherever such injuries may be sustained. *These obligations are limited to the liability imposed by law upon the employer for negligence but specifically exclude any liability on account of occupational disease as well as any liability assumed by the employer under any contract entered into with any other person, association or organization ''.* (Emphasis supplied.)

In addition, the State Insurance Fund undertook to defend any suits brought against the insured '' on account of such injuries ''. This clause reads: '' The State Insurance Fund will defend in the name and on behalf of this employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent ''.

Refusal of the State Insurance Fund to undertake the defense of the actions of impleader brought against the claimant by the United States was based upon the contention of the fund that the liability asserted against claimant was one in contract.

The first cause of action of the impleading petition, however, was based upon the negligence of Cardinal and alleged that any recovery against the United States was attributable to the fault and neglect of Cardinal, entitling the United States to indemnity. It was only in the second cause of action, referred to by the State fund, that the United States relied upon an express contract of indemnity.

It should be pointed out that the policy expressly provides that it is to be construed by reference to the Workmen's Com-

pensation Law as amended, which " shall in all cases govern as to its contents and meaning ". It is accordingly essential to consider the applicable provisions of the Workmen's Compensation Law and the scope of the insurance coverage therein directed and authorized.

In considering these provisions, it will be helpful to review, preliminarily, the background and purposes of the Workmen's Compensation Law. It was the fundamental objective of the act " to do away with liability at common law and to substitute for it liability for compensation." (N. Y. Assembly Doc., 1916, No. 56, p. 155.)

The operation of the statute was described as follows in *Matter of Jensen* v. *Southern Pacific Co.* (215 N. Y. 514, 519): " The scheme of the statute is essentially and fundamentally one by the creation of a state fund *to insure the payment of a prescribed compensation* based on earnings for disability or death from accidental injuries sustained by employees engaged in certain enumerated hazardous employments. The state fund is created from premiums paid by employers based on the payroll, the number of employees and the hazards of the employment. * * * By insuring in the state fund, or by himself or his insurance carrier paying the prescribed compensation, the employer is relieved from further liability for personal injuries or death sustained by employees. * * * Thus the risk of accidental injuries occurring with or without fault on the part either of employee or employer is shared by both and the burden of making compensation is distributed over all the enumerated hazardous employments in proportion to the risks involved." (Emphasis supplied.)

Section 10 of the Workmen's Compensation Law compels every employer to " secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury ".

Section 11 provides that liability of an employer prescribed by section 10: " shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death ".

Section 53 then provides: " § 53. *Release from all liability.* An employer securing the payment of compensation by contributing premiums to the state fund shall thereby become relieved from all liability for personal injuries or death sus-

tained by his employees, and the persons entitled to compensation under this chapter shall have recourse therefor only to the state fund and not to the employer. An employer shall not otherwise be relieved from the liability for compensation prescribed by this chapter except by the payment thereof by himself or his insurance carrier.''

The '' State Insurance Fund '' is created by article 6 of the Workmen's Compensation Law, section 76 of which provides as follows: '' § 76. *Creation of state fund.* 1. There is hereby continued in the department of labor a fund known as ' the state insurance fund,' for the purpose of insuring employers against liability for personal injuries or death sustained by their employees and of assuring to the persons entitled thereto the compensation and benefits provided by this chapter or by any act providing for compensation now or hereafter enacted by the congress of the United States of America if such liability is incident to an employment carried on in this state. Such fund shall consist of all premiums received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund and of interest earned upon moneys belonging to the fund and deposited or invested as herein provided.''

Though an employee is deprived of his common-law remedy against his employer and is relegated to the scheduled compensation payments prescribed by the statute, he may, nevertheless, accept the compensation where he has been injured '' by the negligence or wrong of another not in the same employ'' and, in addition, pursue his remedy against such other person (§ 29).

Thus, it was the plain design of the Workmen's Compensation Law to assure payments to injured employees regardless of fault, and employers were required to secure payment of the stipulated compensation by self-insurance, by insurance in the State Fund or with a private carrier (§ 50.) The risk insured was the compensation provided for. There is nothing in the statutory history or in the structure and plan of the legislation to indicate that there was any purpose to require or permit the establishment of a State fund to protect employers against the risk of liabilities in excess of the prescribed compensation. As to any subsisting common-law liability, the employer's position remained what it was prior to the adoption of the remedial legislation. He could insure or not insure as he chose. Once the employees were protected in their right to the prescribed compensation, no purpose consistent with the object and design

of the legislation could be served by requiring insurance coverage against additional liabilities.

It is true, as claimant contends, that section 53 provides that an employer securing the payment of compensation by contributing premiums to the State fund shall thereby become relieved from *all liability* for personal injuries or death sustained by his employees. But that language is not to be read out of its context. Where an employer insures with a private carrier, the employer remains liable in the event of the carrier's default; thus insurance with a private carrier does not automatically relieve the employer from " all liability ". Where the State fund insures, the employer is relieved of " all liability ". This appears to be the rational significance of the language of section 53. Any other construction would import a liability upon the State fund not required by the statute to be borne by a private carrier. As appears from the First Annual Report of the State Insurance Fund (N. Y. Senate Doc., 1915, No. 52, p. 80) " The only way in which an employer can obtain complete security under the Workmen's Compensation Act — *that is, absolute release from the liability to pay compensation to his employees* — is by insurance in the State Fund. The Workmen's Compensation Act expressly guarantees such absolute release from *all liability* under the Act through section 53." (Italics supplied.)

The report then adds (p. 81): " What higher degree of security could an employer desire than the explicit guarantee of this section? Policy-holders of the State fund are relieved once for all of the *liability to pay compensation,* and under no circumstances could any policy-holder be called upon to pay claims arising under the Act. The payment of this premium to the State Insurance Fund releases him from *such* liability." (Emphasis supplied.)

Accordingly, the release provided for in section 53 constitutes a release from liability to pay compensation and nothing more. Section 76 of the Workmen's Compensation Law, setting up the State fund, adds nothing to the employer's rights. The establishment of a fund for the purpose of insuring employers against liability for personal injuries was intended, as the section indicates, to assure to the persons entitled thereto the compensation and benefits provided by the Workmen's Compensation Law. Every aspect of this legislation, its origin, history and background, indicates a purpose and intent to establish a machinery of *compensation* insurance, whereby the employee was at once protected in his rights to said compensation and at the same time

restricted thereto as against his employer; and the employer was compelled to assume the obligation to pay such compensation and to secure the payment thereof in which event he was relieved of all further liability *to his employees.*

This conclusion is not altered by the fact that the injury may serve as a basis for the imposition of liabilities against the employer to a third party. A primary or principal wrong-doer may be responsible for his negligent act not only to the person directly injured but to a third party held liable in damages for the wrongful act.

The question whether insurance coverage against liability for injuries to employees includes third-party liability was considered in *Treadwell Co.* v. *United States Fidelity & Guar. Co.* (275 N. Y. 158). In that case, the Brooklyn Edison Company had entered into a construction contract with the Treadwell Company and, in the course of the work, a Treadwell employee was injured as the result of the negligence of another contractor. When the employee recovered a judgment against the Edison Company for its failure to furnish a safe place to work, the Edison Company brought suit against the Treadwell Company, alleging negligence in failing to perform its obligations to "keep the job safe * * * for its employees". The action having been discontinued, the Treadwell Company sought to recover from its insurer the legal fees paid to its attorney, relying upon the agreement of the insurer to indemnify the employer against loss by reason of any liability imposed upon him by law for damages on account of injuries to his employees and to defend any action brought on account of such injuries. Rejecting this contention, the court said, per LOUGHRAN, J. (p. 163): "These provisions reveal to us as the dominant purpose of the parties the protection of the Treadwell Company against its liability as an employer to its employees as such. (See Workmen's Compensation Law, § 54; *O'Brien* v. *Lodi,* 246 N. Y. 46.) The meaning and effect of the foregoing covenant to defend are to be resolved accordingly. As we so read it, that undertaking did not go beyond the length of obligating the Fidelity and Guaranty Company to defend all suits and proceedings instituted against the Treadwell Company *by any of its employees* for injuries in the course of the employment, including, however, all groundless, false or fraudulent suits or proceedings of that character. In that view, there was here no breach by the Fidelity and Guaranty Company of its policy." (Emphasis supplied.)

This holding defines the scope of coverage here considered. Since the dominant purpose of the compensation law is similarly

to protect the employer against liability on account of injuries to his employees, it would seem to follow that the risk covered is limited to suits brought by employees. That injuries to employees might indirectly create a liability in the insured to a third party (viz., the Brooklyn Edison Company) did not suffice to extend the coverage of the policy to include such third-party liability.

The State fund, adopted to carry out the purpose of the Workmen's Compensation Act, was quite obviously designed to apply and be confined to liabilities of employers to employees and was not concerned with liabilities of employers to third parties. The premiums, as the act provides, are utilized to create a fund out of which *compensation* is paid to injured employees or their representatives and there is no fund provided for the discharge of obligations of employers to third parties.

Dealing with a similar state of facts in *Barbara* v. *Ransom, Inc.* (191 Misc. 957) FROESSEL, J., at Special Term, said at page 960: "The compensation act does not pretend to relieve an employer of all liability, but only of liability to his employees. Where a third party has been called upon to respond in damages because of the employer's primary negligence, the act does not protect the employer against the third party's right to indemnity."

It is accordingly held that under the Workmen's Compensation Act, which prescribes the permissible extent of coverage by the State fund, an employer may not recover against the State fund for payments made in settlement of a claim for indemnity imposed as a matter of law.

There are other considerations, however, which lead to the conclusion that this claim may not lie. The facts here establish that Cardinal was not liable to the United States as a matter of law; and that the claim he discharged was contractual in nature, a liability expressly excluded by the terms of the policy. The law is well settled that a wrongdoer (the United States), cannot exact indemnity from another wrongdoer (Cardinal), where the active negligence of both has contributed to the damage. (*Tipaldi* v. *Riverside Memorial Chapel*, 273 App. Div. 414 [1st dept., 1948], affd. 298 N. Y. 686; *Schwartz* v. *Merola Bros. Constr. Corp.*, 290 N. Y. 145; *Dunn* v. *Uvalde Asphalt Paving Co.*, 175 N. Y. 214; *Scott* v. *Curtis*, 195 N. Y. 424; *Phoenix Bridge Co.* v. *Creem*, 102 App. Div. 354, affd. 185 N. Y. 580; *Oceanic Steam Navigation Co.* v. *Compania Transatlantica*, 134 N. Y. 461; 1 Cooley on Torts [4th ed.], § 89, p. 292; Restatement, Restitution, § 86.) "The right to indemnity stands upon the

principle that everyone is responsible for the consequences of his own negligence, and if another person has been compelled (by the judgment of a court having jurisdiction) to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him '' (*Oceanic Steam Navigation Co.* v. *Compania Transatlantica, supra,* p. 468).

The applicable principles are stated as follows, in Cooley on Torts (4th ed., Vol. 1, § 89, pp. 291–292): '' The general rule may be found expressed in the maxim that no man can make his own misconduct the ground for an action in his own favor. If he suffers because of his own wrongdoing, the law will not relieve him. The law cannot recognize equities as springing from a wrong in favor of one concerned in committing it. *But there are some exceptions to the general rule which rest upon reasons at least as forcible as those which support the rule itself.* They are of cases where, although the law holds all parties liable as wrongdoers to the injured party, yet as between themselves some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete. There are many such cases where the wrongs are unintentional, or where the party, by reason of some relation, is made chargeable with the conduct of others.'' (Emphasis supplied.)

Here, there was substantial proof of active negligence on the part of the United States, since the uncontradicted testimony was to the effect that Cardinal had been assured by the United States that the refrigeration system of the S. S. *Hilton* had been purged of ammonia; that it was the practice and the responsibility of the owner of the vessel to perform this work in connection with such repairs; and that the United States had failed to perform this duty.

The applicable rule of law was recently enunciated in *Robinson* v. *Binghamton Constr. Co.* (277 App. Div. 468 [3d dept., 1950]) where the plaintiff, an employee of the Municipal Construction Company, brought a third-party action against the Binghamton Construction Company for personal injuries sustained in the course of his employment. Binghamton thereupon impleaded Municipal, alleging its active negligence. In sustaining this claim for indemnity, the court said, per FOSTER, P. J., at pages 470–471: '' No agreement for indemnification has been pleaded, but such an agreement is not always necessary. It may arise from the status of the parties as a matter of law (*Dunn* v. *Uvalde Asphalt Paving Co.,* 175 N. Y. 214). Whether a nondelegable duty may be charged against the party found to

be the owner of the machine in question, and whether indemnification may arise as a matter of law, will depend upon the factual situation as finally presented. It would seem that the first issue involved is the matter of active control, and secondarily whether there is passive liability on the part of one defendant or the other as a result of ownership. This is said, not in limitation of any other issues, but merely as applied to the ground assigned for the dismissal of the third-party complaint. *Of course if the defendants are found to be joint tort-feasors no liability over can exist;* or if plaintiff is found to have been the employee of both defendants, and covered by insurance under the Workmen's Compensation Law, then an entirely different issue will be presented." (Emphasis supplied.)

The liability of a third-party defendant is not affected by the fact that the plaintiff, as its employee, has received the compensation provided for under the Workmen's Compensation Act (*Westchester Lighting Co.* v. *Westchester Co. Small Estates Corp.*, 278 N. Y. 175; *Tabor* v. *Stewart*, 277 App. Div. 1075 [3d dept., 1950]). In such a case, the defendant is charged with liability by reason of the breach of an independent duty or obligation owed the third-party plaintiff, as distinguished from his duty to his employee which is limited, under the Workmen's Compensation Act, to the compensation prescribed by law. This rule was applied in the *Westchester Lighting Company* case, where the court said, per LOUGHRAN, J., at page 180: " It may be admitted that if the defendant is held to answer to the plaintiff in this action the result (as the Chief Judge says) is that an employer is made liable indirectly in an amount which could not be recovered directly. This consequence, we think, does not decide the issue against the plaintiff. Recovery over against the employer in an unusual case like this need not be rested upon any theory of subrogation. An independent duty or obligation owed by the employer to the third party is a sufficient basis for the action. (*Schubert* v. *Schubert Wagon Co.*, 249 N. Y. 253.)"

Similarly in *Tabor* v. *Stewart* (277 App. Div. 1075, *supra* [3d dept., 1950]) the court said, at page 1076: " Although it may develop on the trial that plaintiff's intestate was an employee of the third-party defendants and that compensation has been awarded for his injuries and death, that fact, if it be a fact, will not necessarily defeat Stewart's common-law right of recovery. (*Westchester Lighting Co.* v. *Westchester Co. Small Estates Corp.*, 278 N. Y. 175; see, also, *Robinson* v. *Binghamton Constr. Co., ante,* p. 468, decided herewith.) "

But, as has been pointed out, these decisions, enforcing the liability of a third-party defendant, where compensation has been paid his employee, are grounded upon proof that the third-party defendant has been guilty of active negligence, as distinguished from the passive fault of the third-party plaintiff (*Robinson* v. *Binghamton Constr. Co., supra*).

Where the fault is joint, no right of contribution exists and the third-party defendant is relieved of liability, not by reason of section 11 of the Workmen's Compensation Act, but because there is no right of contribution as between joint tort-feasors (*Cloud* v. *Martin,* 273 App. Div. 769; *Hughes* v. *DeSimone Stevedores,* 277 App. Div. 371 [1st dept., 1950]).

In admiralty, however, the right of contribution between joint tort-feasors is recognized (*Riley* v. *Agwilines, Inc.,* 296 N. Y. 402; *Hughes* v. *DeSimone Stevedores, supra*). As the court declared in the *Hughes* case, per Callahan, J., at page 374: " One tort-feasor, when sued alone, may not implead another under the new third-party procedure found in section 193-a of the Civil Practice Act. The right to implead still rests on the existence of a claim for liability over, which does not arise as between joint tort-feasors (*Cloud* v. *Martin,* 273 App. Div. 769). But DeSimone asserts that the foregoing rule of law has no application to the second cause of action. It points out that this was a maritime accident, and thus the law of admiralty applies, which affords the right of contribution by one joint tort-feasor against another, and that this is a substantive right enforcible in the State courts (see *Riley* v. *Agwilines, Inc.,* 296 N. Y. 402).''

This liability in admiralty necessarily assumes that the employer, as third-party defendant, has been guilty of a joint tort with the third-party plaintiff. But under section 11 of the Workmen's Compensation Act and section 5 of the Longshoremen's & Harbor Workers' Compensation Act ( U. S. Code, tit. 33, § 905), there can be no such joint wrong in the sense that their tort has imposed a common liability to the injured employees (*American Mut. Liability Ins. Co.* v. *Matthews,* 182 F. 2d 322). In the case cited, the court stated, per Swan, J., at page 323: " For a right of contribution to exist between tort-feasors, they must be joint wrongdoers in the sense that their tort or torts have imposed a common liability upon them to the party injured. In the case at bar the shipowner and the stevedoring firm were not under a common liability to the injured employee, nor were they joint wrongdoers. His claim against his employer was not for damages, as was his claim

against the shipowner, nor was it dependent upon any tort committed by his employer. Consequently the shipowner can have no right to contribution based on the theory that they were joint tort-feasors.''

It is thus established both at common law and in admiralty that in a case like this, where there has been *joint fault* there can be no third-party liability.

It follows that Cardinal, in contributing to the settlement of the action of its employees against the United States, discharged a liability that was exclusively contractual. Concededly, the State Insurance Fund did not provide coverage against a liability of this nature.

In settling his Federal actions, Cardinal, in this action against the State, assumed the burden or risk of establishing his liability in the Federal actions (*Mayor, Lane & Co.* v. *Commercial Cas. Ins. Co.,* 169 App. Div. 772; *Cornell* v. *Travelers' Ins. Co.,* 175 N. Y. 239; *Green Bus Lines* v. *Ocean Accident & Guar. Corp.,* 282 N. Y. 104).

Finally, it should be pointed out that the obligation of the insurer to discharge any liability imposed by law embodied in paragraph one(b) of the policy, must be distinguished from its covenant to defend claims whether groundless or not, included in paragraph two of the policy. The authorities hold that the latter obligation extends to all actions in which a claim covered by the policy is alleged, whether or not established (*Goldberg* v. *Lumber Mut. Cas. Ins. Co.,* 297 N. Y. 148). But even if the impleading petition had alleged a liability imposed by law upon Cardinal, it would be concluded by the decision of the Court of Appeals in the *Treadwell* case (*supra*) which is an express determination that a liability policy of the type here involved is limited to actions by employees.

It follows from the foregoing that sections 53 and 76 of the Workmen's Compensation Act do not authorize the State fund to issue policies of insurance covering employers' third-party liability imposed as a matter of law. Even if such coverage were authorized, the facts here establish no such legal liability.

The obligation of Cardinal to the United States was exclusively contractual in nature, a liability expressly excluded by the terms of the policy.

Judgment is accordingly directed dismissing the claim. The foregoing constitutes the written and signed decision upon which judgment may be entered and it is therefore unnecessary to pass upon the proposed findings of fact and conclusions of law (Civ. Prac. Act, § 440).